UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


PARRISH H. NEWMAN (#302282)

VERSUS                                      CIVIL ACTION

N. BURL CAIN, ET AL                         NUMBER 10-121-JJB-SCR


## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, April 13, 2011.


STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


PARRISH H. NEWMAN (#302282)

VERSUS                                      CIVIL ACTION

N. BURL CAIN, ET AL                         NUMBER 10-121-JJB-SCR

## MAGISTRATE JUDGE'S REPORT

Before the court is the petition of Parrish H. Newman for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  An evidentiary hearing was conducted to determine whether the petitioner is entitled to a period of equitable tolling.  For the reasons which follow, the petitioner is not entitled to a period of equitable tolling and his petition should be dismissed as untimely.


### A. Procedural History

Petitioner was found guilty of two counts armed robbery, three counts first degree robbery, one count simple robbery and one count attempted first degree robbery in the Nineteenth Judicial District Court for East Baton Rouge Parish, Louisiana, on April 14, 2005. Petitioner was adjudicated an habitual felony offender and was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.

The Louisiana First Circuit Court of Appeal affirmed the

---

[1] Record document number 1.

convictions and sentences.  *State of Louisiana v. Parrish Newman,*
2006-1037 (La. App. 1st Cir. 12/28/06), 947 So.2d 851 (Table).
Petitioner did not seek review by the Louisiana Supreme Court.

Petitioner signed an application for post-conviction relief
(PCRA) on August 22, 2007, and it was filed in the trial court on
August 27, 2007.[2]  The trial court denied the petitioner's PCRA on
May 20, 2008.  Petitioner sought supervisory review in the
Louisiana First Circuit Court of Appeal.  The appellate court
denied review.  *State of Louisiana v. Parrish Newman*, 2008-1283
(La. App. 1st Cir. 11/10/08).  On December 15, 2008, more than 30
days after the Louisiana First Circuit Court of Appeal denied
review, the petitioner sought supervisory review in the Louisiana
Supreme Court.[3]  The Louisiana State Supreme Court denied review in
a one word decision - "Denied."  *State ex rel. Parrish Newman v.*
*State of Louisiana*, 2009-0231 (La. 10/30/09), 21 So.3d 279.

Petitioner signed his federal habeas corpus petition on
February 15, 2010, and it was filed on February 18, 2010.

---

[2] The affidavit attached to the PCRA is dated August 21, 2007.
The one-day difference is not material.

[3] Petitioner signed, but did not date, his writ application.
Petitioner filed an Inmate's Request for Legal/Indigent Mail
indicating that it was received by the classification officer on
December 15.  The U.S. Mail postage meter stamp is dated December
16, 2008, and the envelope indicates it was received December 18.
Petitioner alleged in his petition that the "Date of filing" of his
writ application was December 15.  Petitioner does not dispute that
his petition was submitted to prison authorities for mailing on
December 15.

## B. Timeliness

Under § 2244(d), as amended by the Antiterrorism and Effective Death Penalty Act, a prisoner in custody pursuant to the judgment of a state court has a one year period within which to file an application for a writ of habeas corpus. The limitation period runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A).

As provided by § 2254(d)(2), the time during which a properly filed application for state post-conviction or other collateral review, with respect to the pertinent judgment or claim, is pending shall not be counted toward any period of limitation under this subsection. A "properly filed application" is one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing. *Lovasz v. Scig*, 134 F.3d 146, 148-49 (3rd Cir. 1998); *Galindo v. Johnson*, 19 F.Supp.2d 697, 701 (W.D. Tex. 1998). A state application is "pending" during the intervals between the state court's disposition of a state habeas corpus petition and the petitioner's timely filing of petition of review at the next level. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

Petitioner's convictions became final on January 29, 2007.[4]

---

[4] For purposes of § 2244(d)(1)(A), a state conviction becomes final by the conclusion of direct review or the expiration of the

From the date the petitioner's convictions became final on January 29, 2007, until August 22, 2007, the date the petitioner signed his PCRA, 204 days of the limitations period elapsed. From May 20, 2008, the date the trial court denied the petitioner's PCRA until November 10, 2008, the date the Louisiana First Circuit Court of Appeal denied review, the limitations period remained tolled. Petitioner had until December 10, 2008, to seek review in the Louisiana Supreme Court. However, he did not seek supervisory review in the Louisiana Supreme Court until December 15, 2008,

---

time for seeking such review. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir. 2003) ("[A] conviction becomes final at the conclusion of direct review or when the time for such review has expired, as specified by AEDPA, regardless of when state law says finality occurs."). Normally that time expires 90 days after the state court of last resort enters its judgment. *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). But when the defendant concludes his state court direct appeal before it reaches the state court of last resort, "the conviction becomes final when the time for seeking further direct review in the state court expires." *Id*. This federal rule applies even where state law provides that finality occurs on a different date. *Compare* La. Code Crim. Proc. art. 922(B) (providing that the court of appeal's judgment becomes final under Louisiana law fourteen days after the rendition of judgment in all cases in which an application for a writ of review is not filed with the Louisiana Supreme Court), *and* La. Sup. Ct. R. X, § (5)(a) ("An application seeking to review a judgment of the court of appeal ... after an appeal to that court ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal ...."), *with Roberts*, 319 F.3d at 693 n. 15 (noting that the judgment of an intermediate court of appeals is not final under Texas law until the mandate has issued), *and id.* at 694-95 (rejecting the argument that the mandate-issuance date should determine finality under AEDPA).

The convictions and sentences became final on January 27, 2007, which was a Saturday. Thus, the time period was extended to the next business day for the court, which was Monday, January 29.

4

thereby exceeding the time limit established by Louisiana Supreme Court Rule X, § 5(a).

Under Louisiana Supreme Court Rule X, § 5(a), the petitioner had 30 days to file his application for supervisory writ to the Louisiana Supreme Court. The rule provides as follows:

> An application seeking to review a judgment of the court of appeal either after an appeal to that court, or after that court has granted relief on an application for supervisory writs (but not when the court has merely granted an application for purposes of further consideration), or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal; however, if a timely application for rehearing has been filed in the court of appeal in those instances where a rehearing is allowed, the application shall be made within thirty days of the mailing of the notice of denial of rehearing or the judgment on rehearing. No extension of time therefor will be granted.

Petitioner failed to comply with Louisiana Supreme Court Rule X, § 5(a) by filing an application for a supervisory writ with that court within 30 days after the intermediate appellate court affirmed his conviction. Rule X, § 5(a) expressly prohibits an extension of the 30-day period.

Petitioner's untimely writ application to the Louisiana Supreme Court did not interrupt the time to file a federal habeas corpus application. *Williams v. Cain*, 217 F.3d 303, 308 (5th Cir. 2000).

From December 10, 2008, the last date to timely seek supervisory review of the denial of his PCRA in the Louisiana Supreme Court, until February 15, 2010, the date the petitioner

signed his federal habeas corpus application, 430 days of the limitations period elapsed.  By the time the petitioner filed his federal habeas corpus application, more than 634 days of the limitations period had elapsed.[5]  Petitioner's federal habeas corpus application was not timely filed.

## C. Equitable Tolling

### 1. Review of the Evidence

In his Traverse to the State's Answer to Petition For Writ of Habeas Corpus[6], the petitioner conceded that he did not submit his application for supervisory writs to prison officials for filing until December 15, 2008.  Petitioner argued that he is entitled to a period of equitable tolling on the ground that the delay was caused by a state-created impediment.  Specifically, the petitioner argued that he could not mail the writ application in a timely manner because a classification officer failed to make rounds on the petitioner's housing unit.  Petitioner amended his Traverse to the State's Answer to Petition for Writ of Habeas Corpus[7] to assert that his Petition for Writ of Certiorari to the Louisiana Supreme

---

[5]  Although the entire state court record was not filed in response to the court's February 18, 2010 order, the portions of the state court record produced are sufficient to determine timeliness of the petitioner's federal habeas corpus application. Moreover, the dates relied upon to determine timeliness are not disputed by the petitioner.

[6]  Record document number 16.

[7]  Record document number 39.

Court was submitted to the Legal Programs Department at the prison, for copying, on December 1, 2008, and the copies to be mailed were not received until December 12, 2008.

At the evidentiary hearing petitioner testified that an inmate counsel substitute prepared his application for a writ certiorari to the Louisiana Supreme Court on November 28, 2008, and he received it on December 1, 2008. Petitioner testified that he submitted his writ application to the Legal Programs Department for copying on December 1, 2008. Petitioner testified that he also completed an Offender Funds Withdrawal Request form and indicated on the form what was being copied, the number of copies needed, and the deadline by which the copies were required.[8] Petitioner testified that the copies of the Louisiana Supreme Court writ application were the only copies he requested during that period of time.

Petitioner testified that he was charged for copies of the writ of writ application on December 1, 2008[9], and that the money

---

[8] Petitioner introduced exhibit B, a sample of an Offender Funds Withdrawal Request form. Exhibit B is not a copy of the Offender Funds Withdrawal Request form the petitioner testified he submitted to prison officials on December 1, 2008, in conjunction with his request for copies of the writ of certiorari to the Louisiana Supreme Court. A copy of the Offender Funds Withdrawal Request form regarding the December 1, 2008 copy request was not introduced into evidence. The parties stipulated that the Department of Corrections was asked to produce withdrawal forms submitted by the petitioner for the month of December 2008 but the Department did was not able to produce the requested forms.

[9] *See* Exhibit C, p. 1.

was not withdrawn from his account until December 12, 2008[10], when $3.92 was withdrawn from his account and he received the copies. However, the petitioner was unable to explain the discrepancy between the itemized copy costs listed on pages one and two of exhibit C, with the cost identified on page three of the exhibit.[11] Petitioner testified that he received the copies on Friday night, December 12, and that he could not submit his writ application to Classification Officer Donald Cavalier for mailing until Monday, December 15 when the offices were staffed.[12]  Petitioner testified that his writ application was due on December 10, and when he did not receive the copies before that date, he tried to speak with Cavalier.  Petitioner testified that he could not contact Legal Programs directly.  Petitioner testified that on December 10, the weather was bad, everything at the penitentiary was shut down and he could not move around.  He testified that he spoke to Cavalier on December 11 and explained that he had not received his copies and that he had missed the filing deadline.  Petitioner testified that Cavalier called the Legal Programs Department and inquired about the copies and that he received the copies the next day. Petitioner testified that he could not mail the writ application

_____

[10] *Id.* at 3.

[11] *Id.*

[12] *See* record document number 1, p. 34, Inmate's Request for Legal/Indigent Mail,

8

over the weekend because classification officers do not work on weekends. Petitioner testified that he had to go through Cavalier, who was responsible for processing the paperwork and through whom such paperwork is considered filed.

Petitioner testified that in December 2008 he was housed at Camp C and was permitted to go by himself to the kitchen and to Cavalier's office located in the mail room. Petitioner testified that on certain days, classification personnel set up tables in the kitchen during lunchtime to allow inmates to post mail, and at other times an inmate had to request a pass to go to the classification office to post mail. Petitioner testified that he had no reason to speak to Cavalier until December 10, when his writ was due. Petitioner testified that he was unable to speak with Cavalier on December 10 because everything at the penitentiary was shut down due to bad weather.

Petitioner testified he requested two copies of his writ application and the exhibits, and that his writ application was approximately 30 pages long. Petitioner testified that he mailed the original and one copy of his writ application to the Louisiana Supreme Court and he mailed one copy to the district attorney.

Dorothy Dufour, Human Resource Supervisor for the Department of Corrections, testified that in December 2008 there were two classification officers employed at the prison, Donald Cavalier and

Julie Dubois Kilgore.[13]  Dufour testified that employment records showed that both Cavalier and Dubois worked for the period between December 1 and December 15, 2008.  Dufour testified that Cavalier did not take any leave during that period and that Dubois took eight hours annual leave on December 3.  Dufour testified that the employment records of the two classification officers contain notations for December 11.  Dufour testified that the code LSOC is a code used by the payroll office to indicate an office closure and ZA04 is a code which indicates that K (compensatory) time was earned.  Dufour testified that even though the office was closed on December 11, both Cavalier and Dubois worked that day.

Cavalier testified that he is a supervisor in the classification department at Louisiana State Penitentiary.  Cavalier testified that one of the responsibilities of a classification officer is to receive outgoing legal and regular mail from prisoners.  Cavalier testified that when a prisoner provides the classification officer with his mail he also submits a funds withdrawal request form and a legal indigent mail request form which acts as the prisoner's receipt.  Cavalier testified that the classification officer deposits the mail in a designated location where it is picked up by mail department personnel for

    [13]  In December 2008, classification officer Julie Dubois Kilgore was identified as Julie Dubois.  Since that time, her name has changed to Julie Dubois Kilgore.  For purposes of this report, she will be referred to as Julie Dubois or Dubois.

processing.  Cavalier testified that prisoners can submit mail to a classification officer at his office or in the kitchen where the classification department routinely sets up a table to receive mail and address prisoner problems.

Cavalier testified that the petitioner had easy access to him in both the kitchen and his office.  Cavalier testified that in December 2008, because the petitioner was assigned to Wolf 3 dormitory, he had greater access to a classification officer and was able to bring his mail to him.  Cavalier testified that the petitioner was assigned to a farm line, and because the farm lines did not go out during this time of year, the petitioner would have had a greater opportunity to meet with him.  Cavalier testified that the farm lines would not have reported for work if it was raining or snowing.

Cavalier testified that a review of the entrance building log books showed that he was at work every day between December 1 and December 15, 2008, except on weekends.  Cavalier testified that the entrance building log books showed that except for December 4, he logged into the log book each week day, i.e., December 1, 2, 3, 5, 8, 9, 10, 11, 12, and 15.  Cavalier testified that the kitchen log books showed that he was in the kitchen on December 5, 8, 10 and 15.  Cavalier testified that security controls the log books and that he does not always have access to the log books.  Cavalier testified that because of this, he may have failed to sign a log

book even though he was actually at work and in the kitchen. Cavalier testified that during this period he was also available in his office.

Cavalier testified that the Legal Programs Department is responsible for processing copy requests. Cavalier testified that he could not recall making a telephone call to the Legal Programs Department on the petitioner's behalf regarding copy work in December 2008 but that it is not uncommon to make such calls on behalf the prisoners. Cavalier testified that he would never go to the Legal Programs Department to retrieve copy work for a prisoner.

Cavalier testified that the petitioner's inmate bank account transaction form, exhibit C, showed copy charges. Cavalier testified that prisoners are charged five cents per page for copies. Cavalier testified that if the petitioner was indigent at the time the transaction took place, the transaction form would indicate the date the money was taken from his account and not the date the transaction occurred. Cavalier testified that the petitioner would be allowed to post mail and make copies and when funds became available in the account the funds would periodically be withdrawn from the account until the costs were paid.

Cavalier testified that the canteen sales log contains only canteen purchases and does not contain charges for copies. Cavalier testified that the Department of Corrections Incentive Pay Log contains the record of incentive pay the petitioner received.

Cavalier testified that the petitioner was assigned to a farm line and earned pay at the rate of two cents per hour. Cavalier testified that for the week ending November 23, 2008, the petitioner was paid for eight hours, the week ending November 30, he was paid for 16 hours, and the week ending December 7, he was paid for 24 hours. Cavalier testified that half of the money was deposited in the petitioner's drawing account and the other half was deposited in his savings account.

## 2. Application of the Law to the Evidence

There is no basis in the record for equitable tolling. The one-year federal limitations period is subject to equitable tolling only "in rare and exceptional circumstances." *United States v. Patterson*, 211 F.3d 927, 928 (5th Cir. 2000). The doctrine "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006). Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807,

1814 (2005).

In this case, the petitioner argued that his Petition for Writ of Certiorari to the Louisiana Supreme Court was submitted to the Legal Programs Department at the prison, for copying, on December 1 and the copies were not received by him until December 12. Petitioner argued that because the copies were not delivered until December 12, he was unable to deliver the writ application to a classification officer to be mailed until the office reopened on Monday, December 15. However, the evidence showed that although the petitioner was aware of the looming December 10 filing deadline, he failed to take any action to retrieve copies of the writ from the Legal Programs Department until December 11 - after the deadline – when he obtained assistance from Cavalier. The evidence showed that although Cavalier was available to assist the petitioner between December 1 and 10 and the petitioner had easy access to him, the petitioner waited until after the filing deadline to request his assistance.

The record supports a finding that the petitioner did not diligently pursue habeas corpus relief. A review of the record disclosed no "rare and exceptional circumstances" to justify equitable tolling. *Fisher v. Johnson*, 174 F.3d 710 (5th Cir. 1999).

## **RECOMMENDATION**

It is the recommendation of the magistrate judge that the petitioner's application for habeas corpus relief be dismissed, with prejudice, as untimely pursuant to 28 U.S.C. § 2244(d).

Baton Rouge, Louisiana, April 13, 2011.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE